# AFFIDAVIT

I, Daniel Merchand, being sworn, depose and state as follows:

1. I am a Detective Corporal with the Burlington Police Department. Currently, I am assigned as a Task Force Officer with the United States Department of Justice, Drug Enforcement Administration ("DEA"). I have participated in investigations relating to the possession, distribution and manufacturing of controlled substances, including crack cocaine. I have also conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of recorded conversations. Through my training and experience, I have become familiar with the manner and methods of illegal narcotic distribution conspiracies.

2. This affidavit is submitted to show probable cause to believe that on or about February 18, 2015, Alonzo JONES, also known as "Moe," and Aaron DRUMGO, also known as "A," conspired to distribute cocaine base, more commonly known as crack cocaine, a schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846.

3. The facts in this affidavit come from my personal observations and knowledge, my training and experience, and information obtained from other agents, law enforcement personnel, and witnesses. I have also reviewed reports of investigation prepared by Burlington Police Department detectives about the events described below. This affidavit is intended to show merely that there is probable cause for the offense charged, and does not set forth all of my knowledge about this matter.

4. On February 18, 2015, at approximately 5:45 am, members of the United States Marshals Service (USMS), assisted by the Burlington Police Department (BPD), conducted a search at 25 South Willard Street, Apartment 5, Burlington, Vermont, in an attempt to locate a known fugitive with an active arrest warrant who resides at the apartment. As part of this search, law enforcement officers, including BPD Corporal Brian Difranco, were strategically placed outside of the residence in the event someone tried to flee from the apartment.

5. As law enforcement was making entry into the apartment, a male, later identified as Aaron DRUMGO, attempted to flee from the apartment by climbing out of a second story window and attempting to jump to the street below. DRUMGO's clothing became caught on a planter hook that was affixed to the brick wall and he was suspended in mid-air outside the second story of the building. Because he was facing away from the building, DRUMGO was unable to extricate himself from the hook and had to be rescued by the Burlington Fire Department.

6. As DRUMGO was suspended outside the building, Cpl. Difranco saw a male, later identified as Alonzo JONES, throw something out of the same window from which DRUMGO had jumped. From his suspended position, DRUMGO stated to Cpl. Difranco "You saw him, right?" The item thrown by JONES landed near where Cpl. Difranco was located. Cpl. Difranco retrieved what he had observed JONES throw from the apartment, which was the cover to a digital scale and an off-white colored chunky substance in a plastic baggie. BPD Detective Corporal Michael Hemond, who is assigned to the USMS, took custody of the baggie and recognized the contents of the baggie to be cocaine base, or "crack cocaine." Det. Hemond later field tested the suspected crack cocaine and it tested positive for the presence of cocaine. Det. Hemond weighed the suspected crack cocaine and, including the packaging, it weighed approximately 67.1 grams.

7. BPD Det. Dwayne Mellis located JONES inside of the residence standing by the window of the rear bedroom where DRUMGO had jumped and the items were thrown. Cpl. Difranco positively identified JONES as the one who threw the crack cocaine from the apartment. Det. Mellis then took JONES into custody. Det. Mellis also observed a digital scale by JONES' right foot which had a white residue on it.

8. There were also two females located in the apartment, one of whom lived there. The resident provided written consent to law enforcement to search the apartment. Located in the apartment was a plate that the resident advised JONES and DRUMGO used to package cocaine. Also located were two men's jackets that the resident identified as belonging to JONES and DRUMGO. The resident asked that JONES' and DRUMGO's belongings be removed by police from the residence.

9. While securing the two jackets, Det. Hemond and USMS Deputy Michael Barron observed that the pocket of one of the jackets, later identified as belonging to JONES, was open and there was a plastic baggie containing a large chunk of a white rocky material inside. Det. Hemond secured the pocket and took the items to the BPD. Trooper Hunt of the Vermont State Police responded to the BPD with his drug detection K-9, and the K-9 examined the jacket for the presence of narcotics. Trooper Hunt said that the K-9's behavior of a head snap, several deep nasal air intakes, and then scratching the jacket, was consistent with positive alerts to the presence of regulated drugs. Det. Mellis then obtained a State of Vermont search warrant for the jacket. Execution of that search warrant revealed a plastic baggie containing an off-white colored chunky substance. Det. Hemond field tested the substance and it tested positive for the presence of cocaine. Including the packaging, the substance weighed approximately 123.9 grams. In total, approximately 191 grams of cocaine base was seized by law enforcement.

10. Det. Hemond and Det. Sgt. Couture interviewed the resident of the apartment again, following the search of the jacket. The interview was a sworn audio recorded statement. During this interview, the resident disclosed the following:

    a. She knew JONES as "Moe" and DRUMGO as "A."

    b. The resident further advised the day before the search, she and the other female found in the apartment at the time of the search had traveled to Albany, New York for the purpose of picking up JONES and DRUMGO. She admitted that from past dealings with the two males over the last few months, she believed that it was likely that JONES and DRUMGO were bringing a quantity of narcotics with them to Vermont on this trip. The resident further advised that the two males were involved in cocaine sales and had sold cocaine using her residence in the past. She stated that she had seen JONES conduct "more than 100" sales of cocaine in the past, estimating the amounts being sold as approximately one-half gram at a time.

    c. The resident met DRUMGO first, and he introduced her to JONES. She had known them for several months. She identified DRUMGO's involvement in the drug transactions as being more in the background, meaning he set up the sales by phone, but was not involved in the hand-to-hand transactions.

    d. Of the two jackets found in the residence, the resident identified a black jacket with a logo on the front to belong to DRUMGO, and the black jacket with no logo on it to belong to JONES.

11. Det. Hemond and Det. Sgt. Couture also interviewed the second female found in the apartment at the time of the search. She confirmed that she and the resident had traveled to Albany, New York, the day before to pick up JONES and DRUMGO.

12. I have reviewed a report prepared by Det. Mellis and learned the following:

a. DRUMGO was transported to the hospital after he was rescued from the side of the building. While at the hospital, Det. Mellis showed him the jacket (black Polo jacket with a Polo emblem on the front) identified as belonging to him. DRUMGO confirmed that it was his jacket. DRUMGO gave Det. Mellis consent to search the jacket. Det. Mellis found approximately $1,050.00 and a New York State benefit identification card with DRUMGO's photo on it in a pocket. In the left jacket pocket, Det. Mellis found approximately $142.00. In the left breast pocket, Det. Mellis found several documents with DRUMGO's name on them.

Dated at Burlington, in the District of Vermont on this 19th day of February, 2015.

_____
DANIEL R. MERCHAND
Task Force Officer, DEA

Sworn to and subscribed before me this 19th day of February, 2015.

_____
HONORABLE JOHN M. CONROY
UNITED STATES MAGISTRATE JUDGE